**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GAYE ADAMS, GREG LEWIS, DANIEL
PATTERSON, and CHRISTINE M.
WALLACE,

         *Plaintiffs-Appellants,*

         v.

UNITED STATES FOREST SERVICE,
JEANINE DERBY, Forest Supervisor
for Coronado National Forest, and
ANN BIRMINGHAM SCHEEL, Acting
United States Attorney for the
District of Arizona,

         *Defendants-Appellees.*

No. 10-16711

D.C. No.
4:08-CV-00283-
RCC

OPINION

On Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
November 15, 2011—San Francisco, California

Filed February 9, 2012

Before: Alex Kozinski, Chief Judge, Carlos T. Bea,
Circuit Judge, and Robert W. Gettleman, District Judge.*

Opinion by Judge Gettleman

---

*The Honorable Robert W. Gettleman, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

**COUNSEL**

Matt Kenna (argued), Public Interest Environmental Law, Durango, Colorado, and Mary Ellen Barilotti, Hood River, Oregon, for the appellants.

Ignacia S. Moreno, Assistant Attorney General, and Andrew C. Mergen, David C. Shilton, and Nicholas A. DiMascio (argued), United States Department of Justice, Environmental and Natural Resources Division, Washington, DC, for the appellees.

---

**OPINION**

GETTLEMAN, District Judge:

The Federal Lands Recreation Enhancement Act ("REA") prohibits the United States Forest Service from charging fees "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides," for "hiking through . . . without using the facilities and services," and "[f]or camping at undeveloped sites . . . ." 16 U.S.C. § 6802(d)(1)(A), (D) & (E). Despite these clear prohibitions, the Forest Service collects fees from all drivers who park their vehicles in a mile-wide piece of the Coronado National Forest running along the 28–mile Catalina Highway, the only paved road to the summit of Mount Lemmon, a heavily used recreational area an hour's drive from downtown Tucson, Arizona.

Four recreational visitors sued,[1] seeking a declaration that

---

[1] Also named as defendants were the Forest Supervisor for the Coronado National Forest and the United States Attorney for the District of Arizona. Defendants will be referred to herein collectively as the "Forest Service." Ann Birmingham Scheel, Acting United States Attorney for the District of Arizona, is substituted for Diane J. Humetewa pursuant to Fed. R. App. P. 43(c)(2).

the Forest Service was exceeding the scope of its authority under the REA by charging fees to those who drive to Mount Lemmon, park their cars, then picnic, hike, or camp in nearby undeveloped areas. Plaintiffs also sought to enjoin the Forest Service from collecting such fees. The district court granted defendants' Rule 12(b)(6) motion to dismiss. Plaintiffs appealed. Because plaintiffs are correct that the Forest Service's fee structure contravenes the plain language of the REA, we reverse the district court's dismissal of Count I[2] and remand to allow plaintiffs to pursue that claim.

## *BACKGROUND*[3]

**[1]** Everyone is entitled to enter national forests without paying a cent. 16 U.S.C. § 6802(e)(2) ("The Secretary shall not charge an entrance fee for Federal recreational lands . . . managed by . . . the Forest Service."). The Forest Service may, however, charge a "standard amenity recreation fee" in an "area":

> (A)   that provides significant opportunities for out-door recreation;

> (B)   that has substantial Federal investments;

> (C)   where fees can be efficiently collected; and

> (D)   that contains all of the following amenities:

---

[2]The district court also found that two of the four plaintiffs should be dismissed on claim and issue preclusion grounds, and that Counts II and III failed to state a claim. Plaintiffs have not appealed those rulings.

[3]Because this is an appeal from an order granting a motion to dismiss, the following facts come from the complaint and "documents on which the complaint 'necessarily relies' and whose 'authenticity . . . is not contested.' " *Warren* v. *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003) (quoting *Lee* v. *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

    (i)   Designated developed parking.

    (ii)   A permanent toilet facility.

    (iii)   A permanent trash receptacle.

    (iv)   Interpretive sign, exhibit, or kiosk.

    (v)   Picnic tables.

    (vi)   Security services.[4]

**[2]** But the REA prohibits the Forest Service from charging that fee, even in a place where subsection (f) would otherwise authorize it, "for certain activities or services." 16 U.S.C. § 6802(d)(1). This blanket "[p]rohibition on fees for certain activities or services" forbids fees, among other things:

> "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides";

> "[f]or persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services"; and

> "[f]or camping at undeveloped sites that do not provide a minimum number of facilities and services as described in 16 U.S.C. § 6802(g)(2)(A)."

Before enacting the REA, Congress conducted a decade-long experiment with collecting visitor fees at national forests. The Recreational Fee Demonstration Program, enacted in 1996, required the Forest Service to select between 10 and 100 sites where it "shall charge and collect fees for admission to the area or for the use of outdoor recreation sites, facilities,

---

[4] 16 U.S.C. § 6802(f)(4).

visitor centers, equipment, and services."[5] The Forest Service selected several parts of the Coronado National Forest, including Mount Lemmon, where it promptly began charging an entrance fee for all recreational visitors. In response to concerns that fees were being collected from individuals who (like plaintiffs) wanted to use undeveloped land, not services and amenities, Congress drafted the REA, an "overly prescriptive" regime designed "to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation fee authority." H.R. Rep. 108-790(I), 108th Cong., 2d Sess. 2004 (Nov. 19, 2004), 2004 WL 2920863, at *18. Specifically, the REA "made clear that the [Forest Service] will not be permitted to charge solely for parking, scenic pullouts, and other non-developed areas." *Id.*

[3] After the REA was enacted, the Forest Service drafted Interim Implementation Guidelines. Those guidelines interpreted the REA as authorizing the Forest Service to impose a standard amenity recreation fee in a "High Impact Recreation Area" ("HIRA"), defined as:

> a clearly delineated, contiguous area with specific, tightly defined boundaries and clearly defined access points (such that visitors can easily identify the fee area boundaries on the ground or on a map/sign); that supports or sustains concentrated recreation use; and that provides opportunities for outdoor recreation that are directly associated with a natural or cultural feature, place, or activity (i.e., waterway, canyon, travel corridor, geographic attraction—the recreation attraction).

The Guidelines require a HIRA to meet the same criteria as the REA requires for an "area" where the Forest Service may collect a standard amenity recreation fee, and add four more

---

[5]Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, tit. III, § 315(b)(1) (1996).

criteria.[6] The Guidelines also include the heightened require-ment that the six amenities be "located in an integrated man-ner so they reasonably accommodate the visitor."

Finding that the land adjacent to the Catalina Highway met all of the Guidelines' requirements, the Forest Service desig-nated that area as a HIRA. The fee structure there remained essentially identical to the one under the Recreational Fee Demonstration Program, with one concession to the REA: an exemption for visitors who drive through without stopping (except at pullouts and overlooks).[7] The Forest Service also chose to exempt all visitors who enter the Mount Lemmon HIRA without a car. Not exempted, however, are visitors who

---

[6]These additional criteria are:

  a.  They incur significant expenditures for items such as opera-tions and maintenance of recreation facilities, public health and safety, educational services, and protection of natural and cultural resources.

  b.  They have been analyzed by regional fee boards and approved by the appropriate line officer. They will be reviewed for [sic] by Recreation RACs [Resource Advisory Committees] when established.

  c.  They are not an entire administrative unit such as a National Forest, but may include a collection of recreation sites; and

  d.  They typically display one or more of the following charac-teristics:

      a.  They are within 2 hours driving time of populations of 1 million or more;

      b.  They contain rivers, streams, lakes or interpreted scenic corridors[;]

      c.  Natural and cultural resources management activities are conducted in the area to maintain or enhance recreation opportunities; and

      d.  They have regionally or nationally recognized recreation resources that are marketed for their tourism values.

[7]16 U.S.C. § 6802(d)(1)(F) ("The Secretary shall not charge any stan-dard amenity recreation fee . . . [f]or use of overlooks or scenic pullouts.").

drive into the HIRA, park their cars, then picnic, camp, or hike in undeveloped areas accessible from the highway. Any such visitor who fails to pay the $5 fee and display a valid pass is subject to a fine.

Based on their position that the Forest Service was impermissibly imposing fees on that group of visitors, plaintiffs filed a complaint seeking declaratory and injunctive relief, as well as reimbursement of fees they had already paid, on behalf of a putative class.[8] Defendants filed a motion to dismiss the complaint, which the district court granted. The sole issue on appeal is the district court's ruling that Count I (alleging that the Forest Service violated § 6802(d)(1) of the REA by collecting a standard amenity recreation fee for parking and hiking, picnicking, or camping in undeveloped areas in the Mount Lemmon HIRA) failed to state a claim.

Defendants argued that the Forest Service's interpretation was entitled to *Chevron*[9] deference, and under *Chevron* its interpretation was reasonable. The district court disagreed that *Chevron* deference was warranted, finding that the Interim Implementation Guidelines indicated that the Forest Service might not have conducted notice and comment rulemaking. The court, however, applied *Skidmore*[10] deference, based on its conclusion that the Forest Service had crafted the Guidelines through its "official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case." *Skidmore*, 323 U.S. at 139. Under this less deferential review, the district court nonetheless agreed with defendants that the Forest Service's interpretation of the REA in the Guidelines was reasonable.

---

[8]Although the complaint was styled as a class action, plaintiffs had not moved for class certification when the district court granted the motion to dismiss.

[9]*Chevron, U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

[10]*Skidmore* v. *Swift & Co.*, 323 U.S. 134 (1944).

Plaintiffs filed a Rule 59(e) motion to reconsider, arguing that: (1) the statute was unambiguous, so the district court should not have deferred to the agency's interpretation; (2) the court erred in applying *Skidmore* deference to a statute carrying criminal consequences; and (3) even if *Skidmore* review were proper, the court did not correctly apply it. The court largely disagreed, but did find that it had erred in failing to state that the statute was ambiguous before proceeding to apply *Skidmore*. Finding that the error was harmless, however, the court denied the motion.

## STANDARD OF REVIEW

"A district court's decision to grant a motion to dismiss under Rule 12(b)(6) is reviewed de novo." *Ta Chong Bank Ltd.* v. *Hitachi High Techs. Am., Inc.*, 610 F.3d 1063, 1066 (9th Cir. 2010) (citation omitted). In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff. *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted).

In evaluating an agency's interpretation of a governing statute, the court conducts the familiar two-step *Chevron* inquiry. At the first step, the court asks "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If it has, the agency (and the court) must give effect to Congress's clearly expressed intent. If, however, the text is ambiguous, the court proceeds to step two and considers whether the agency's interpretation was "a reasonable policy choice for the agency to make." *Id.* at 845.

## DISCUSSION

The REA unambiguously prohibits the standard amenity recreation fee structure in place at the Mount Lemmon HIRA. The statute provides that the Forest Service "may charge"—

"[*e*]xcept as limited by subsection (d)"—a standard amenity recreation fee "*at*" four types of locations, one of which is an "area" with all of six enumerated amenities. 16 U.S.C. § 6802(f) (emphasis added).[11] The Forest Service "may" also, "[e]xcept as limited by subsection (d)," "charge an expanded amenity recreation fee"—this is a crucial difference—"only for" the "use of" ten different "facilities and services." 16 U.S.C. § 6802(g)(2). A standard amenity recreation fee is not, like expanded fees, for the *use* of certain amenities—it is a general fee that an agency may charge "at" the four places listed in subsection (f)(4). Subsection (d)(1) is a freestanding prohibition on collecting standard and expanded amenity recreation fees "for" a list of eleven activities or services. This list of prohibited fees includes those that are: "[s]olely for parking, undesignated parking, or picnicking along roads or trailsides"; "[f]or persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services"; and "[f]or camping at undeveloped sites that do not provide a minimum number of facilities and services as described in 16 U.S.C. § 6802(g)(2)(A)." 16 U.S.C. § 6802(d)(1)(A), (D), & (E). The statute is abundantly clear that a standard amenity recreation fee cannot, under any circumstances, be charged for those activities.

**[4] A.** The Forest Service is prohibited from charging an amenity fee "[s]olely for parking." 16 U.S.C. § 6802(d)(1)(A). There is nothing ambiguous about that text. If all a visitor does is park, and he is charged a fee, that fee is imposed "[s]olely for parking." If a visitor parks at Mount Lemmon, he is charged a fee. If a visitor goes to Mount Lemmon but does not park there, he is not charged a fee. *See United States* v. *Smith*, 740 F. Supp. 2d 1111, 1124 (D. Ariz.

---

[11]The other three are National Conservation Areas, National Volcanic Monuments, and "destination visitor or interpretive center[s] that provide[ ] a broad range of interpretive services, programs, and media." 16 U.S.C. § 6802(f)(1)-(3).

2010) ("It is apparent that Mr. Smith would not have received a ticket had he not parked a vehicle, i.e., had a friend delivered him to the trailhead and retrieved him the following day. Accordingly, what Mr. Smith received was actually a ticket for parking, clearly prohibited by the plain language of the statute."). It may often be the case that a visitor, after parking, does something else. Then the fee would not be "[s]olely for parking," and so long as the "something else" is not another activity for which subsection (d)(1) prohibits an amenity recreation fee, the agency is free to charge him. But if a visitor does nothing other than park, the fee is solely for parking and is therefore plainly prohibited by the REA.

According to the Forest Service's version of the statute's "plain text," however, a fee is "[s]olely for parking" only "where the other amenities required by REA are absent." That is incorrect. If it were true, a "[s]olely for parking" fee would be possible *only* in places where the REA requires amenities,[12] but then the parking fee prohibition would *never* limit fees in those places, where by definition amenities are present. And subsection (d)(1)(A) would never apply to expanded amenity recreation fees, because those are permitted only for certain "facilities and services." 16 U.S.C. § 6802(g)(2). "[A]n agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear," *MCI Telecomms. Corp.* v. *Am. Tel. and Tel. Co.*, 512 U.S. 218, 229 (1994), and here, the Forest Service's interpretation so diminishes the entire prohibition on fees "[s]olely for parking" as to defy the statute's meaning.

Because this reading is so illogical, we will consider another interpretation of the agency's position. Perhaps the Forest Service is really saying that a fee is "[s]olely for parking" when imposed in a location where a visitor has no option

---

[12]These consist of subsection (f)(4) areas and possibly (f)(3) visitor or interpretive centers, defined as providing "a broad range of interpretive services, programs, and media."

to do something else, whether or not that "something else" is an amenity required by the statute. A parking fee in the Mount Lemmon HIRA, therefore, is not "[s]olely" for parking—it is also "for" other things, because it is *possible* that the parker might proceed to do something for which subsection (d)(1) does not prohibit a fee. This interpretation, however, would be sensible only if we ignored the plain meaning of the word "for" in the context of the REA.

Because "for" is, of course, not defined in the statute, we must give it "its ordinary or natural meaning.*" Smith* v. *United States*, 508 U.S. 223, 228 (1993) (citation omitted). This might seem like an impossible task—according to Webster's, "for" has over thirty non-obsolete meanings. Webster's Third New International Dictionary 886 (2002). "Ambiguity," however, "is a creature not of definitional possibilities but of statutory context." *Brown* v. *Gardner*, 513 U.S. 115, 118 (1994). And the statutory context here—a "[p]rohibition on fees for certain activities or services"—allows only one definition. 16 U.S.C. § 6802(d)(1). In common understanding, a buyer pays a fee "for" something he chooses to buy, even if that "something" is simply an option to do or use something (like $17.99 "for" an all-you-can-eat buffet). Consider what would happen if a restaurant-goer inspected his bill and noticed an unexpected charge. If told that the fee was for ten bottles of wine that the patron's group neither ordered nor drank, the patron would rightly be outraged. He would not find much solace in a waiter's explanation that the wine cellar contained ten bottles, which the patron *could* have ordered if he wished.

Moreover, the REA clearly contemplates that individuals can go to a place offering facilities and services without using the facilities and services and without paying a fee. For example, subsection (d)(1)(D) prohibits fees "for persons who are driving through, walking through, boating through, horseback riding through, or hiking through . . . *without using the facilities and services*." 16 U.S.C. § 6802(d)(1)(D) (emphasis

added). The statute thus distinguishes between merely recreating in an area and actually using an area's amenities.

**[5]** By ignoring the plain text, the Forest Service arrives at an interpretation that would enable an end-run around the clear statutory restrictions. If the REA gave the agency complete discretion to dictate a fee's so-called purpose, then the agency could entirely evade the prohibition on parking fees by simply declaring that its fees are "for" something else too. At any of the places where subsection (f) contemplates recreation fees, it is possible for a visitor to do something more than park a car—take photos of a volcano, make a cell phone call, chew a piece of gum—and a visitor *must* use a facility or service to be subject to a subsection (g) fee. Therefore, the agency could simply say that its parking fee is also "for" those other activities.[13] Because the REA has a plain meaning that does not lead to an absurd result, we have no need to afford deference to the agency's competing, nonsensical interpretation. *See Lamie* v. *United States Trustee*, 540 U.S. 526, 538 (2004). It is clear that the Forest Service cannot charge a fee from someone who does nothing other than park.

**B.** It is equally clear that the REA prohibits the Forest Service from charging standard amenity recreation fees for each of several activities in which plaintiffs participate *after* they park: hiking without using facilities and services, picnicking on a road or trailside, or camping at a site that does not have a majority of the nine enumerated amenities.

**[6]** First, § 6802(d)(1)(D) clearly prohibits imposing a fee "[f]or persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facili-

---

[13]The only place where parking could be the sole activity is a designated developed parking facility—for which the REA authorizes standard amenity recreation fees only in conjunction with five other amenities. 16 U.S.C. § 6802(f)(4)(D)(I).

ties *and* services." 16 U.S.C. § 6802(d)(1)(D) (emphasis added). The agency interprets the conjunction "and" too loosely. It claims that its fees comply with the statute because any visitor who travels through the HIRA necessarily "uses" its security services. But security services are, at most, "services"—not "facilities *and* services." *Id.* (emphasis added). "And" does not mean "or." *Idaho* v. *Wright*, 497 U.S. 805, 831 n.2 (1990) (Kennedy, J., dissenting) ("The word 'and' is conjunctive . . . . The Legislature would have used the word 'or' had it intended the disjunctive.") (quotation and citation omitted); *MacDonald* v. *Pan Am. World Airways, Inc.*, 859 F.2d 742, 746 (9th Cir. 1988) (Kozinski, J., dissenting) ("As a linguistic matter, 'and' and 'or' are not synonyms; indeed, they are more nearly antonyms. One need only start the day with a breakfast of ham *or* eggs to be duly impressed by the difference."). The Forest Service points to no "facilities" that a backcountry hiker necessarily uses.

**[7]** The Forest Service also maintains that the latter part of § 6802(d)(1)(A), which prohibits fees "solely for . . . picnicking along roads or trailsides," clearly permits fees for road or trailside picnics that take place within a larger area (delineated by the Forest Service) if that larger area offers amenities. The REA does not say that. It provides simply and unambiguously that the Forest Service cannot collect a standard amenity fee from someone who picnics on a road or trailside, even if that picnic occurs within an "area" that has amenities. The Forest Service fails to distinguish—as the statute does—between someone who glides into a paved parking space and sits at a picnic table enjoying a feast of caviar and champagne, and someone who parks on the side of the highway, sits on a pile of gravel, and eats an old baloney sandwich while the cars whizz by. The agency collects the same fee from both types of picnickers. That practice violates the statute's plain text. "If a visitor drives close enough to [the HIRA], parks to have a picnic on the side of the road, and then calls it a day, she'll have paid the amenity fee only for picnicking and undesignated parking—activities for which no

fee is supposed to be charged under § 6802(d)(1)." *Scherer* v. *United States Forest Serv.*, 653 F.3d 1241, 1243 (10th Cir. 2011); *see id.* at 1244 (noting, in the course of rejecting a facial challenge to a HIRA's implementation plan, that an as-applied challenge might not suffer the same fate).[14]

**[8]** Finally, the Forest Service claims that it may charge a fee for any and all camping within the Mount Lemmon HIRA. The REA, however, clearly prohibits fees "[f]or camping at undeveloped sites that do not provide a *minimum number* of facilities and services as described in subsection (g)(2)(A)." 16 U.S.C. § 6802(d)(1)(E); *see* 16 U.S.C. § 6802(g)(2)(A) (requiring a "developed" campsite to provide "at least a majority" of nine specified facilities and services). The Forest Service violates that prohibition by charging visitors who camp at sites lacking the required "minimum number" of nine "facilities and services." For example, a camper who pitches a tent in a spot without garbage cans, picnic tables, campfire pits, bathrooms, and someone collecting fees is required to pay a standard amenity recreation fee. That plainly violates § 6802(d)(1)(E).

**C.** In sum, the statutory language is clear. The Forest Service's interpretation is thus entitled to no deference. *Chevron*, 467 U.S. at 842-43. As alleged by plaintiffs, the Forest Service's fee structure at the Mount Lemmon HIRA does not

---

[14]Curiously, it was the Forest Service that brought *Scherer* to our attention. The Forest Service cites it in a Rule 28(j) letter arguing that, as in Scherer, this is a facial challenge, and plaintiffs must—but cannot—establish that "no set of circumstances exists" under which the recreation fee for Mount Lemmon would be valid. *Akhtar* v. *Burzynski*, 384 F.3d 1193, 1198 (9th Cir. 2004). This argument was not raised in the district court or in the briefs here, probably because it is patently without merit. Plaintiffs attack only the application of fees to those who engage in activities at Mount Lemmon for which the REA expressly prohibits fees. In contrast, the plaintiffs in Scherer sought to invalidate the Forest Service's entire Implementation Plan for the Mount Evans HIRA. *Scherer*, 653 F.3d at 1243.

comport with the REA's express prohibition on charging fees for parking and then hiking through the HIRA without using the facilities and services, camping in undeveloped areas, or picnicking on roads or trailsides. The district court thus erred in dismissing plaintiffs' claim.

## *CONCLUSION*

[9] For the foregoing reasons, we conclude that the REA unambiguously prohibits the Forest Service from charging fees in the Mount Lemmon HIRA for recreational visitors who park a car, then camp at undeveloped sites, picnic along roads or trailsides, or hike through the area without using the facilities and services. We therefore reverse the district court's grant of defendants' motion to dismiss Count I and remand to the district court for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**