**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

THOMAS ALPERN,

      Plaintiff - Appellant,

v.

BRIAN FEREBEE, in his official capacity
as the U.S. Forest Service Region 2 Acting
Regional Forester; UNITED STATES
FOREST SERVICE,

      Defendants - Appellees.

No. 19-1086

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CV-00024-RM)**
_____

Kristine M. Akland of Akland Law Firm PLLC, Missoula, Montana (Timothy M.
Bechtold of Bechtold Law Firm PLLC, Missoula, Montana with her on the briefs), for
Plaintiff–Appellant.

Corrine V. Snow, Attorney, Environment and Natural Resources Division (Jeffrey
Bossert Clark, Assistant Attorney General; Eric Grant, Deputy Assistant Attorney
General; Robert J. Lundman, and Barclay T. Samford, Attorneys, Environment and
Resources Division, with her on the brief), United States Department of Justice,
Washington, D.C., for Defendant–Appellees.

_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Across this great country, visitors can enjoy a trip to one of our nation's beautiful national forests. Whether visitors must pay a fee as part of their trip is determined by the Federal Lands Recreation Enhancement Act (REA). This prescriptive statute details when the agencies that run and maintain our public lands can and cannot impose a fee: the REA generally allows fees for developed areas but proscribes fees for undeveloped ones. Thomas Alpern claims that the United States Forest Service (Forest Service) improperly charges him a fee when he enters Maroon Valley to park and hike. He cites a REA provision that he claims prohibits charging a fee "[s]olely for parking[.]" 16 U.S.C. § 6802(d)(1)(A). He argues that this prohibition overrides another REA provision that allows agencies to charge a fee when certain listed amenities are present—amenities such as picnic tables, security patrols, trash bins, and interpretive signs. *Id.* § 6802(f)(4). We disagree. Section 6802(d)(1)(A) prohibits charging fees "[s]olely for parking . . . along roads or trailsides[,]" something Alpern does not do. He parks in a developed parking lot featuring all the amenities listed in § 6802(f)(4), not along a road or trailside. So we affirm the district court's decision to reject Alpern's as-applied challenge to the Maroon Valley fee program.

## BACKGROUND

Just outside of Aspen, Colorado sits Maroon Valley—part of White River National Forest and home to the stunning Maroon Bells. The valley is popular with backpackers, hikers, and campers, among others, due to its spectacular natural beauty and abundant outdoor recreation opportunities. Most visitors to Maroon Valley pay

2

$10 at a welcome station,[1] unless they are "merely driving through" or briefly stopping at the "Stein Meadow View Pullout."[2] Appellant's App. at 31, 130. Ninety percent of the collected fees are then reinvested in Maroon Valley. Paying visitors can park for up to five days in one of three developed parking lots—East Maroon Wilderness Portal, West Maroon Wilderness Portal, or Maroon Lake Scenic Area. Each lot provides visitors with various amenities, including bathrooms, interpretive signs, and picnic tables. These lots are the only day-parking options in Maroon Valley, meaning convenient access to its wilderness areas often requires a fee.

Alpern hikes in Maroon Valley and the surrounding wilderness areas where he "often go[es] on multi-day backpacking trips" or day hikes exceeding twelve hours. Appellant's App. at 26–27. To do so, he enters the valley on its only road, pays the $10 fee, and parks in one of the three lots "to access the trail[s]," while claiming never to use any of the lot's various amenities. *Id.* at 26–29. Based on this, Alpern brings an as-applied challenge to Maroon Valley's fee program—administered by the Forest Service—alleging that it violates the REA by charging him "[s]olely for parking[.]" Appellant's App. at 5, 10–11 (citing 16 U.S.C § 6802(d)(1)(A)). The district court rejected this challenge, ruling the fee program proper as applied to Alpern. *Alpern v. Ferebee*, No. 1:17-cv-00024-RM, 2019 WL 1046789, at *1–3 (D.

---

[1] Visitors can also enter Maroon Valley via bus between 9:00 AM and 5:00 PM without being charged the $10 fee.

[2] Visitors are asked about their intentions at the welcome station and are charged the fee only if they are going to park in one of the three developed parking lots.

Colo. Mar. 5, 2019) (citing 16 U.S.C § 6802(d)(1)(A)). Alpern timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Standard of Review

Alpern mounts an as-applied challenge to the fee program in Maroon Valley; therefore, we apply the law "to the facts of [his] concrete case." *See Colo. Right to Life. Comm., Inc. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007). He argues that charging him a fee to park in one of the three developed parking lots contravenes 16 U.S.C. § 6802(d)(1)(A)'s mandate that fees not be charged "[s]olely for parking[.]" Thus, he asks us to invalidate the fee program using the authority granted to us by the Administrative Procedure Act (APA). *See* 5 U.S.C. § 706(2)(C) ("[R]eviewing court[s] shall . . . hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."). And "[u]nder the [APA], which governs judicial review of agency actions, we review the lower court's decision de novo." *See Citizen's Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (citations omitted).

### II. Maroon Valley's Fee Program as Applied to Alpern

"As a general rule Congress has decreed that anyone may enter this country's great national forests free of charge." *Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1242 (10th Cir. 2011) (citing 16 U.S.C. § 6802(e)(2)). But federal agencies can "charge a standard amenity recreation fee for Federal recreational lands and waters

4

under the jurisdiction of the Bureau of Land Management, the Bureau of

Reclamation, or the Forest Service[] . . . at the following:"

> **(1)** A National Conservation Area.
> **(2)** A National Volcanic Monument.
> **(3)** A destination visitor or interpretive center that provides a broad range of interpretive services, programs, and media.
> **(4)** An area--
>> **(A)** that provides significant opportunities for outdoor recreation;
>> **(B)** that has substantial Federal investments;
>> **(C)** where fees can be efficiently collected; and
>> **(D)** that *contains all of the following amenities*:
>>> **(i)** Designated developed parking.
>>> **(ii)** A permanent toilet facility.
>>> **(iii)** A permanent trash receptacle.
>>> **(iv)** Interpretive sign, exhibit, or kiosk.
>>> **(v)** Picnic tables.
>>> **(vi)** Security services.

16 U.S.C. § 6802(f) (2018) (emphasis added and bold in original). This authority to

"charge a standard amenity recreation fee" is "limited by subsection (d)," which

provides that:

> The Secretary shall not charge *any standard amenity recreation fee* or expanded amenity recreation fee for Federal recreational lands and waters administered by the Bureau of Land Management, the *Forest Service*, or the Bureau of Reclamation under this chapter for any of the following:
>> **(A)** *Solely for parking*, undesignated parking, or picnicking *along roads or trailsides*. . . .
>> **(D)** For persons *who are driving through*, walking through, boating through, horseback riding through, or *hiking through* Federal recreational lands and waters *without using the facilities and services*. . . .
>> **(F)** For use of overlooks or scenic pullouts.

*Id.* § 6802(d)(1), (f) (emphasis added and bold in original).

This appeal centers on the interplay of these two provisions. Section

6802(f)(4) allows fees at locations with all six statutory amenities present, except

5

where § 6802(d) applies. In this case, Alpern concedes that all three developed parking lots in Maroon Valley contain the six amenities listed in § 6802(f)(4), making it a location where the Forest Service can charge a standard amenity fee unless § 6802(d)(1) applies. Alpern argues that § 6802(d)(1)(A) applies, prohibiting the Forest Service from charging a fee at that location "solely for parking[.]" Appellant's Reply Br. 1. Thus, the sole question before us is whether § 6802(d)(1)(A)'s exception applies to Alpern's use of the developed parking lots in Maroon Valley, making the Forest Service's fee program unlawful as it applies to him.[3]

Section 6802(d)(1)(A) prohibits "the Forest Service" from charging "any standard amenity recreation fee . . . [s]olely for *parking*, undesignated parking, or picnicking *along roads or trailsides*." § 6802(d)(1)(A) (emphasis added). Alpern contends that "parking" is not modified by "along roads or trailsides" such that this provision prohibits fees "solely for parking," meaning the fee is improper as applied to him because even though he parks in a developed lot (which is one of the six amenities in (f)(4)), he never uses any of the other five amenities. Appellant's Opening Br. 17–18, 26. This interpretation is incorrect.

Section 6802(d)(1)(A) contains a series—"parking," "undesignated parking," and "picnicking"—followed by a postpositive modifier—"along roads or trailsides."

_____

[3] Section 6802(f)(4) does not require the use of any of these amenities; rather, it allows charging a fee at "an area . . . that contains" the listed amenities. § 6802(f)(4). Thus, because Alpern concedes the parking lots contain all the listed amenities, the only way he can prevail in this appeal is if one of the § 6802(d)(1) exceptions applies.

"[W]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 615–16 (10th Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)).

Here, the statute's structure leads us to conclude that each term in the series is modified by "along roads or trailsides." Each element is separated only by a comma, and no words or punctuation interrupt the series' nouns (outside of a single adjective). *See* § 6802(d)(1)(A). No odd punctuation breaks up the series' flow, and the series contains no determiners between terms, indicating that the postpositive modifier applies to each element. "The typical way in which syntax would suggest no carryover modification is that a determiner (*a*, *the*, *some*, etc.) will be repeated before the second element[.]" Scalia & Garner, *supra* at 148–49 (noting that "[w]ith postpositive modifiers, the insertion of a determiner before the second item tends to cut off the modifying phrase so that its backward reach is limited—but that effect is not entirely clear").[4] For these reasons, we conclude that the statute prevents charging a visitor "solely for parking . . . along roads or trailsides." § 6802(d)(1)(A); *see also Scherer*, 653 F.3d at 1243 (concluding that charging an amenity fee when a visitor simply "parks to have a picnic on the side of the road, and then calls it a day," is not

---

[4] *Compare* Scalia & Garner, *supra* at 148 ("*Institutions or societies that are charitable in nature* (the institutions as well as the societies must be charitable)."), *with* Scalia & Garner, *supra* at 149 ("*An institution or a society that is charitable in nature* (any institution probably qualifies, not just a charitable one).").

7

allowed because the visitor will "have paid the amenity fee only for *picnicking and undesignated parking*—activities for which no fee is supposed to be charged under § 6802(d)(1)" (emphasis added)). And because Alpern does not park along either a road or trailside, instead parking in a developed parking lot, § 6802(d)(1)(A)'s exception does not apply to him, even if all he does is park in the lot.

Other REA provisions support this conclusion. For example, § 6802(d)(1)(D) prohibits charging a fee to certain classes of visitors who pass through a statutory-fee area "without using the facilities and services." This statutory exception applies to visitors who (1) drive through (without parking), (2) walk through, (3) boat through, (4) ride horses through, or (5) hike through. *Id.* Conspicuously unlisted are visitors who park at a fee area and claim not to use any amenities. *See id.* Enumerating the types of visitors who are exempt from fees when they do not use amenities demonstrates that Congress knows how to exempt visitors who do not use amenities. So by not exempting visitors who park in a (f)(4)-fee area without using amenities, Congress allows such visitors to be charged a fee despite not using all of the amenities. *See Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) (noting that "the canon *expressio unius est exclusio alterius* . . . provides that the expression of one item of an associated group or series excludes another left unmentioned" (alterations and citations omitted)).

The REA's legislative history supports this view by showing that Congress intended for fees to support agency investment in the corresponding fee area, while preserving free access to undeveloped public lands. According to the REA's House

8

Report, the Act sought "to improve recreational facilities and visitor opportunities on federal recreational lands by reinvesting receipts from fair and consistent recreational fees and passes[.]" H.R. Rep. No. 108-790(I), at 12 (2004). This meant that the REA would help "agencies . . . raise revenues to eliminate the backlog of deferred maintenance, increase the quality and quantity of visitor services, provide critical resource protection, and meet other high-priority needs." *Id.* To accomplish this, the REA contains "specific restrictions to ensure that any established fee would be for managed recreation purposes that contain substantial federal investment for the visitor." *Id.* at 13. Thus, the REA allows agencies to charge visitor fees when doing so supports agency investment in the fee area to enhance the visitor experience—such as by providing visitors a developed parking lot with nearby toilets, signs, trash cans, and picnic tables.

In addition to providing a revenue source to help "enhance the visitor experience by investing fees in improving recreation opportunities[,]" the REA's drafters were concerned that allowing blanket access fees would impose "an unreasonable barrier to public use." *Id.* For this reason, the REA "was overly prescriptive to alleviate concerns of those who no longer trust certain federal land management agencies with the recreation fee authority." *Id.* at 14. For example, the REA "ma[kes] clear that the [the Forest Service] will not be permitted to charge solely for parking, scenic pullouts, and other non-developed areas . . . ." *Id.* In this way, the REA attempts to limit fees for areas where federal investment/development is lacking—*i.e.*, the area is non-developed. Such non-developed areas include

9

roadsides, off-trail land, and other locations in which the visitor's experience is enhanced solely by the outdoors, not by agency-provided amenities. This legislative history backs up the statute's plain language—fees are typically allowed where federal investment has occurred but not where nature is the sole attraction.

Here, Alpern parks in a developed parking lot near toilets, picnic tables, interpretive signs, and several other amenities, all of which demonstrate federal investment of the kind that would foreclose applying § 6802(d)(1)'s exceptions. Alpern does not park in an undeveloped lot with no amenities, nor does he pull to the side of the road and hike from there.[5] Instead, he parks in locations where fees are allowed—§ 6802(f)(4) areas—and which bear the marks of substantial federal investment. So a plain reading of the REA forecloses Alpern's argument that the Maroon Valley fee program is invalid as applied to him.

As an alternative, Alpern counters that even if "along roads and trailsides" modifies "parking" in § 6802(d)(1)(A), he cannot be charged because by parking in developed parking lots with trail access, he "is actually parking along a trailside," meaning that his activity fits within § 6802(d)(1)(A)'s exception. Appellant's Reply Br. 6. This interpretation fails. Though the exception likely covers a visitor's pulling over to the roadside to hike or parking in an undeveloped lot to access hiking trails, it does not cover a visitor's parking in a developed lot with amenities. Most parking

---

[5] Alpern's inability to do so for this location does not matter to our decision. The REA says nothing about providing free parking to visitors. And Alpern can always avoid the fee by taking a bus, hitching a ride, or biking into the valley.

10

lots in public-land areas are located near trailheads. Often, that is why the lot is there—to allow for easy public access to the trails. Adopting Alpern's proposed interpretation would render § 6802(f)(4)'s allowance of fees for these areas illusory.

We note as well that Alpern's argument that he parks in the developed lots without using any other amenity listed in § 6802(f)(4) is incomplete. The six listed amenities in § 6802(f)(4) are: (1) a "[d]esignated developed parking" lot; (2) a "permanent toilet facility[;]" (3) a "permanent trash receptacle[;]" (4) an "[i]nterpretive sign, exhibit, or kiosk[;]" (5) "[p]icnic tables[;]" and (6) "[s]ecurity services." Though Alpern may choose not to use amenities (2), (3), (4), or (5), he admittedly uses (1) and necessarily uses (6) because he receives the benefit of security services by parking his car in a patrolled parking lot.

Though Alpern does not admit using the security services, he does so every time he parks in one of the three Maroon Valley lots, each of which provides the six (f)(4) amenities—one of which is security. We see no realistic scenario in which he does not use the security services. What if a security officer notices a would-be thief breaking into Alpern's car? Should the officer ignore the break-in, somehow divining that Alpern has silently disavowed the use of security? Or should the officer intervene? Most users would expect the officer to intervene, even if they did not plan on using security services when they parked. Now, let's assume Alpern would not want the officer to intervene, how would this be accomplished? Would he need to put a sticker on his car indicating to security officers that they should let would-be intruders go about their business uninterrupted? Wouldn't that just invite break-ins?

11

Or perhaps officers could refuse to intervene when a car lacks proof of paying the fee—an approach that would also invite thieves.[6] This demonstrates the difficulty that would result from adopting Alpern's reading of the statute. Thus, because security, by its very nature, is something that provides a benefit, Alpern necessarily uses the security services whenever he parks his car in one of the three Maroon Valley lots. And because Alpern's argument hinges on the idea that the statute prohibits fees "solely for parking," his benefitting from security—a (f)(4) service—defeats his argument.

The REA allows the Forest Service to charge a fee for "Federal recreational lands" when the area includes six amenities. 16 U.S.C. § 6802(f)(4). Nothing in the statute requires using all of them. Any such requirement would be impossible to police. People could easily evade the fee by claiming never to use the toilets, trash cans, or picnic tables. Because Alpern parks in § 6802(f)(4) parking lots, the Forest Service has authority to charge him the user fee.[7]

---

[6] Alpern claims in his declaration that he has "never seen a Ranger Patrolling West or East Maroon Portal or drive by while I am there," Appellant's App. at 27, as though this indicates that security services are not provided and, thus, he does not use them. But this lack of encounters with security is easily explained by other parts of his declaration. For example, he often starts hiking before 6:00 AM. And he claims to not use any amenities, meaning that he goes straight from his car to the trails, leaving little time in the parking lot for a chance encounter with security.

[7] Alpern concludes his Reply Brief by "ask[ing us] to join the Ninth Circuit's holdings regarding the REA and find that the Forest Service's practice of charging fees for users who park solely to access the undeveloped lands beyond the areas with amenities does not comport with the REA." *See* Appellant's Reply Br. 21 (referencing *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1139–40 (9th Cir. 2012)). But Alpern misunderstands the Ninth Circuit's holding. Instead of providing support

**CONCLUSION**

We conclude that the Forest Service properly charges Alpern a fee when he parks in one of three developed Maroon Valley lots. Thus, we affirm the district court and dismiss the case.

---

for his position, *Adams* holds exactly what we do here: "The only place where parking could be the *sole* activity is a *designated developed parking facility*—for which the REA authorizes standard amenity recreation fees only in conjunction with five other amenities." *Adams*, 671 F.3d at 1145 n.13 (citing 16 U.S.C. § 6802(f)(4)(D)(i) (emphasis added)).